No. 8903.

## HOOD ET AL. v. BURLINGTON RESERVOIR, DITCH AND LAND COMPANY.

RESERVOIR COMPANY—*Duty and Liability.*  Defendant was the owner of an irrigating ditch taking water from the Platte River, and conveying it to Barr Lake Reservoir.  It was a mutual ditch. Sundry of its stockholders owned lands at a distance from the reservoir, and organized separate corporations, called respectively The Extension Company and Hudson Company, each of which constructed laterals from the reservoir to the lands of these stockholders.  To be entitled to water, the consumer was required to hold stock both in the irrigating company, and one of the extension companies.  Plaintiff was such stockholder, and sued for the value of crops lost by reason of the alleged negligence of defendant, in failing to supply water, according to its contract.  The negligence relied upon was in the conservation and distribution.

It was held that when the defendant had delivered to the extension companies, respectively, their due proportion of the water in the reservoir, its duty was at an end. ·

The fact that defendant at times allowed an employee of an extension company to turn water from the reservoir, had not the effect to change the status in this respect.

2. CORPORATIONS—*Different—Identical Officers.*  An irrigating company which supplies water from a reservoir to other and different corporations, who are charged with its delivery and distribution to the consumers, is not liable for the defaults of such distributing corporations, even though some of the offices in the two corporations are occupied by the same persons.

3. CONTRACT—*Construed.*  Defendant maintained a reservoir from which it delivered water to other corporations, the owners of lateral ditches, extending to a distance from the reservoir.

Plaintiff was entitled to water from the reservoir, to be delivered through one of the laterals. .

A contract of the defendant declared that the water was to be used by plaintiff upon designated lands.  *Held,* in view of a long established practice to the contrary, that this could not be construed as importing that defendant should convey the water to these lands, but rather to limit the area of land to be irrigated with a specified volume, and prevent the consumer from delivering any portion of it to others for other lands.

*Error to Adams District Court, Hon. H. S. Class, Judge.*

Mr. W. C. HOOD, JR., for plaintiffs in error.

Messrs. SMITH, BROCK & FERGUSON, for defendant in error.

Chief Justice Hill delivered the opinion of the court.

THE plaintiffs in error, hereafter called the plaintiffs, instituted this action to recover damages to crops, caused from lack of water during the year 1910, which they allege the defendant had contracted to furnish them, and their assignors, through its ditch and reservoir system. A motion for non-suit was sustained and the action dismissed. This is the error complained of. The evidence discloses that the defendant is the owner of what is called The Burlington Ditch, which secures its water from the Platte river, near Denver, running thence in a northeasterly direction to near the town of Barr, where it owns a system of reservoirs called Barr Lake; that it is what is commonly known as a mutual ditch and reservoir company, and as such has proprieties for its ditch and reservoir; that a large number of its stockholders are supplied from its ditch before it gets to the reservoir, the remainder out of the reservoir; that only stockholders are entitled to water; that in order for them to get it, in addition to paying annual assessments on their stock, they must sign an application or contract for the amount of water they wish for, any year, and pay an additional amount therefor; that the defendant's properties terminate at the reservoir; that in order to have the water carried from the reservoir to the lands involved as well as other tracts, two carrying companies were incorporated known as The Extension and Hudson Companies, each of which constructed two laterals, or carrying canals, starting near the main dam of the reservoir (Barr Lake), thence running in northerly directions; that in order to derive any benefit from stock in these carrying companies its owners must likewise be stockholders in the defendant company. In other words, it

requires stock in both to give the privilege of carriage from the river to the lands north of the reservoir; that the practice has been for the defendant company to secure the water from the river, carry it through its ditch, store it in the reservoir, then turn it out into these Extension ditches when called for by the person in charge of them, to be by them carried to their respective stockholders entitled thereto, and in proportion to the amount that each is entitled from the defendant company.

The complaint, among other things, charges the defendant with negligence in not securing sufficient water in the reservoir during the winter of 1909 and 1910. It is agreed, however, that this allegation was not sustained by any proof, but to the contrary that the reservoir was reasonably supplied in the spring of 1910 and that the negligence proven, if any, was in the conservation and distribution of the water in and from the reservoir, during the irrigation season of the year last named. When sustaining the motion for non-suit and holding the defendant guiltless in these respects, the court said:

"The main question now, and it seems to me at all times has been, the wrongful distribution. * * * I think the Burlington Company, the defendant, is not charged with the distribution of the water after it is turned out of the headgate at Barr Lake. Counsel now has met that contention by relying upon the terms of the contract, which says that, in effect, the Burlington Ditch, Reservoir and Land Company had agreed to deliver the water to the lands of the plaintiffs. I was very much interested in that theory of construction of the contract, but I find that I am not in accord with his views in that regard. The testimony shows that the purpose of the Extension Company was to sarry the water and charge for the same; * * * So in this case if the water was wrongfully distributed, it was the wrongful act of the Extension Ditch Company and not of the Burlington Ditch, Reservoir and Land Company."

We are in accord with this conclusion. The record discloses that the Extension Companies were organized by

the consumers of water below the reservoir, for the purpose of receiving from the reservoir the waters to which the plaintiffs as stockholders of the defendant were entitled. The Extension Companies were the agents of the plaintiffs for this purpose, and when the defendant delivered the water to them for the plaintiffs, its duties concerning it ceased, the responsibility for its proper distribution rested upon the Extension Companies, of which plaintiffs were stockholders. The fact that some of the officers of the defendant were also officers of the Extension Company did not make any difference in this respect. The fact that the defendant at times allowed an employe of the Extension Company's to turn the water into the Extension Ditches from the reservoir did not change this status, as he was only doing what he would have had a right to call upon the defendant to do for him. According to the evidence, it was the duty of the defendant company to turn the water into the Extension Ditches when called for by those in charge of them, when this was done, as before stated, its responsibility ceased, the handling of it thereafter, including its distribution, was the act of the Extension Companies. The fact that the defendant company permitted these employes to do certain acts for it which were proper, viz., turn the water from the reservoir into the Extension Ditches, would not make it liable for its wrongful distribution by the same persons as employes of the Extension Companies.

The claim that the Extension Companies were the agents of the defendant company in delivering the water, is not sustained by any proof. 'Tis true, the contract says that the water is to be used for irrigation and domestic purposes upon certain land, describing it, but there is nothing in the contract which says that the defendant company shall deliver it to these lands. The evident object of the company in placing this limitation in the contract was to limit the amount of land that could be irrigated by any stockholder with a certain amount of water, also probably to prevent the consumer from selling, leasing or delivering

any portion of it to another for other lands. Whether this limitation is valid, need not be determined, but it is incapable of being construed into a contract of carriage to the lands of the consumer. As heretofore stated, the Extension Companies were expressly organized for this purpose. This fact, together with the practice followed, tends to disclose that the parties had never placed such a construction upon the contract.

The authorities cited which recognize certain principles pertaining to connecting lines of railroads where the initial carrier receives the commodity for transportation to a station upon another line has no application to a case of this kind.

The judgment is affirmed.

*Affirmed.*

Mr. Justice Garrigues and Mr. Justice Scott concur.